**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   SEP 1 7 2009   ★

LONG ISLAND OFFICE

| | |
|---|---|
| JACUZZI, INC. | ) |
| Plaintiff, | ) |
| v. | ) |
| ATLANTIC CASUALTY INSURANCE COMPANY, NORTHWAY POOL SERVICE, INC., and PATRICIA CASEY, As Executrix of THE ESTATE OF JOSEPH P.CASEY, | ) |
| Defendants. | ) |

**CV - 09  4012**

**SEYBERT, J.**

**ORENSTEIN, M.**

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Plaintiff JACUZZI, INC. ("JACUZZI"), by its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, pursuant to CPLR § 3001, for its Complaint for Declaratory Judgment against Defendants ATLANTIC CASUALTY INSURANCE COMPANY ("ATLANTIC"), NORTHWAY POOL SERVICE, INC. ("NORTHWAY"), and PATRICIA CASEY, As Executrix of THE ESTATE OF JOSEPH P.CASEY ("CASEY"), states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the matter pursuant to 28 U.S.C. §1332 (a) by reason of diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs. This is an action for a declaration of rights under an insurance policy in connection with an underlying lawsuit.

2.      JACUZZI is a California corporation with its principal place of business in California.  JACUZZI is authorized to conduct business in the State of New York.

3.      Upon information and belief, ATLANTIC is a North Carolina corporation with its principal place of business in North Carolina.  ATLANTIC issues policies of insurance in the State of New York.

4.      Upon information and belief, NORTHWAY maintains a business location at 11 Patton Road, St. James, New York, 11780.  NORTHWAY is a necessary party to this pleading by virtue of its status as a Defendant/Counter-Defendant in the underlying action.

5.      Upon information and belief, CASEY is a citizen of the State of New York, residing in the County of Suffolk.  CASEY is a necessary party to this pleading by virtue of her status as the Plaintiff in the underlying action.

6.      Venue is appropriate in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391.

### JACUZZI'S SERVICE AGREEMENT WITH NORTHWAY

7.      On or around March 19, 2001, NORTHWAY entered into a "Service Agreement" (hereinafter "Agreement") with JACUZZI for the purchase, resale, and service of JACUZZI products.  A copy of that Agreement is attached hereto as **Exhibit A.**

8.      The Agreement between the parties designates NORTHWAY as the service station for JACUZZI products.  Accordingly, pursuant to the Agreement, NORTHWAY provides warranty and other labor services for JACUZZI products.

9.      The Agreement imposes certain conditions on NORTHWAY including indemnification and insurance obligations.  Specifically, Paragraph L of the Agreement requires

NORTHWAY to indemnify and hold harmless JACUZZI in any action or against any claims arising from acts of third parties in relation to the Agreement.

10.     Paragraph M of the Agreement between JACUZZI and NORTHWAY also requires NORTHWAY to provide JACUZZI with insurance coverage under the following provision:

> "* * * [NORTHWAY] shall maintain, at its sole expense, insurance covering such risks as is generally accepted as reasonable and proper business practice and shall submit to Company [JACUZZI] as evidence of such insurance upon request.

11.     Under the Agreement, it was the intention of JACUZZI and NORTHWAY that JACUZZI would receive substantial economic protection from exposure to claims of third parties in consequence of negligent services provided by NORTHWAY.

12.     Upon information and belief, NORTHWAY did procure insurance coverage for JACUZZI as an additional insured on its insurance policy with ATLANTIC.

13.     JACUZZI has complied with the terms of the Agreement.

## THE ATLANTIC POLICY

14.     ATLANTIC issued to NORTHWAY a General Liability policy bearing policy number L035004809 for the policy period February 1, 2006-07 (hereinafter the "ATLANTIC policy").

15.     On or about March 5, 2008, ATLANTIC provided JACUZZI with a copy of its insurance policy.  What ATLANTIC purports to be a complete copy of its policy is attached hereto as **Exhibit B**[2].

16.     The ATLANTIC policy contains an "Insuring Agreement", which provides:

---

[2] JACUZZI has expressed its concern that the policy provided to it by ATLANTIC is incomplete and has on several occasions requested a certified copy of the subject policy.  To date, ATLANTIC has not provided JACUZZI with such copy.

## 1. Insuring Agreement

a. **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result * * ***

17.     The ATLANTIC also policy provides contractual liability coverage.  In other words, the ATLANTIC policy applies to damages assumed in a contract or agreement that is an "insured contract".

18.     The Commercial General Liability Coverage Form, number CG 00 01 10 01, of the ATLANTIC policy provides relevantly as follows:

b.     **Contractual Liability**

**"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:**

                                * * *

(2)     **Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. * * ***

19.     In Section V–Definitions of the ATLANTIC Policy, the term "insured contract" is defined relevantly as follows:

**"Insured contract" means:**
                                * * *

f.     **That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.**

> **Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.**

20.     Under the above definition, the Agreement constitutes an insured contract.

### THE CASEY LAWSUIT

21.     In or around July 2001, CASEY purchased a JACUZZI hot tub, serial number 94874, Imperial Model number 7570.

22.     Pursuant to the Agreement, on or about April 28, 2006, NORTHWAY performed repair work to the JACUZZI hot tub located at CASEY's home.

23.     On or about April 28, 2006, CASEY sustained serious physical injury leading to his death as a result of his alleged use of the JACUZZI hot tub.

24.     Consequently, on or about July 23, 2007, CASEY initiated a lawsuit against NORTHWAY and JACUZZI entitled *Patricia Casey, As Executrix of the Estate of Joseph P. Casey v. Northway Pool Service, Inc., et al* pending in the Supreme Court of the State of New York County of Suffolk (hereinafter the "underlying lawsuit"). A copy of that pleading is attached hereto as **Exhibit C.**

25.     The underlying lawsuit alleges that NORTHWAY performed negligent repair work on the JACUZZI hot tub, causing the decedent's injury.

26.     If true, this act and/or omission would breach the Agreement, as described above.

### ATLANTIC FAILS TO DEFEND JACUZZI
### IN THE CASEY LAWSUIT

27.     Pursuant to the Agreement, on September 8, 2008, JACUZZI tendered its defense and indemnification in this matter to NORTHWAY and ATLANTIC. A copy of that correspondence is attached hereto as **Exhibit D.**

28.     After receiving a denial letter from NORTHWAY, on or about September 29,

2008, JACUZZI again tendered its defense and indemnification in this matter to ATLANTIC. A copy of that letter is attached hereto as **Exhibit E.**

29. Having received no response, on October 28, 2008, JACUZZI sent ATLANTIC a follow up tender letter. A copy of that correspondence is attached hereto as **Exhibit F.**

30. On October 30, 2008, ATLANTIC denied JACUZZI's tender claiming it has no duty to defend and indemnify JACUZZI in the <u>CASEY</u> lawsuit.

31. Among other things, ATLANTIC claimed that JACUZZI failed to provide it with timely notice of the lawsuit.

32. On or about December 1, 2008, JACUZZI responded to the denial of tender. In that correspondence, JACUZZI asserted that ATLANTIC had actual or constructive notice of the claim and JACUZZI's potential claim for coverage under the policy back in March 2008 and therefore cannot now disclaim coverage based on "late" notice.

33. Having heard no response, on February 10, 2009, JACUZZI sent a follow up letter to ATLANTIC.

34. To date, JACUZZI has not received any response from ATLANTIC.

### COUNT I
### (Declaratory Judgment-ATLANTIC Policy Covers JACUZZI)

35. JACUZZI reasserts and realleges Paragraphs 1- 34 in their entirety as Paragraphs 1- 34 of Count I as though fully set forth herein.

36. Upon information and belief, pursuant to the Agreement, NORTHWAY procured insurance coverage for JACUZZI as an additional insured on its insurance policy with ATLANTIC.

37. Accordingly, ATLANTIC had and has a duty to defend and indemnify JACUZZI for the <u>CASEY</u> lawsuit pursuant to JACUZZI's status as an additional insured on the

ATLANTIC policy.

38.   Even if JACUZZI were not an additional insured on the ATLANTIC policy, which JACUZZI disputes, the Agreement constitutes an "insured contract" as that term is defined in the ATLANTIC policy.

39.   Accordingly, ATLANTIC's coverage obligations are implicated under both the Agreement and insurance policy.

40.   ATLANTIC has breached those duties by refusing to defend and indemnify JACUZZI with respect to the CASEY lawsuit.

41.   An actual controversy exists between the parties hereto, making this case appropriate for disposition under CPLR § 3001.

42.   JACUZZI has no adequate remedy at law.

WHEREFORE Plaintiff JACUZZI, INC. prays that this Court enter a declaratory judgment in its favor and against Defendant ATLANTIC CASUALTY INSURANCE COMPANY, declaring, adjudging and decreeing as follows:

a.   JACUZZI is an additional insured with respect to the underlying case, under the policy issued by ATLANTIC to NORTHWAY;

b.   ATLANTIC had and has a duty to defend and indemnify JACUZZI with respect to the CASEY lawsuit;

c.   ATLANTIC breached the ATLANTIC policy by failing to honor its duty to defend and indemnify JACUZZI with respect to the CASEY lawsuit and that ATLANTIC must reimburse JACUZZI for all amounts incurred or spent for its defense of the lawsuit;

d.   ATLANTIC breached the ATLANTIC policy by failing to defend and indemnify JACUZZI with respect to the CASEY lawsuit and that ATLANTIC is obligated to indemnify JACUZZI with respect to that lawsuit; and

e.   For such other relief and further relief as this Court deems proper and just.

## COUNT II
### (Declaratory Judgment-Estoppel)

43.     JACUZZI reasserts and realleges Paragraphs 1- 42 in their entirety as Paragraphs 1- 42 of Count II as though fully set forth herein.

44.     The allegations of the <u>CASEY</u> lawsuit clearly fall within the terms of the ATLANTIC policy, thus ATLANTIC's reliance on certain policy terms or policy interpretations to refuse JACUZZI's tender is unjustified, unreasonable, and clearly erroneous.

45.     Because the allegations in the <u>CASEY</u> lawsuit fall within the scope of the policy, ATLANTIC had and has a duty to defend JACUZZI.

46.     ATLANTIC breached its duty to defend JACUZZI by refusing JACUZZI's tender.

47.     ATLANTIC, by breaching its duty to defend, is now estopped from asserting any alleged policy defenses and must defend and indemnify JACUZZI for the <u>CASEY</u> lawsuit.

WHEREFORE Plaintiff JACUZZI, INC. prays that this Court enter a declaratory judgment in its favor and against Defendant ATLANTIC CASUALTY INSURANCE COMPANY, declaring, adjudging and decreeing as follows:

      a.      ATLANTIC is barred from asserting any policy provisions, exclusions or defenses, to JACUZZI's tenders;

      b.      ATLANTIC has a duty to defend JACUZZI under its policy with respect to the <u>CASEY</u> lawsuit;

      c.      Based on the imposition of estoppel,  ATLANTIC is required to reimburse  JACUZZI for all fees and costs JACUZZI incurred in the defense of the <u>CASEY</u> and to exclusively bear all future defense fees and costs for JACUZZI;

      d.      Based on imposition of estoppel, ATLANTIC is required to indemnify JACUZZI for the <u>CASEY</u> lawsuit up to the limits of the ATLANTIC policy; and

  e.  For such other relief as this Court deems proper and just.

**COUNT III**
**(Breach of Contract)**

48.  JACUZZI reasserts and realleges Paragraphs 1- 47 in their entirety as Paragraphs 1-47 of Count III as though fully set forth herein.

49.  ATLANTIC has a contractual obligation under the ATLANTIC policy to defend and indemnify JACUZZI with respect to the <u>CASEY</u> lawsuit.

50.  JACUZZI has fully complied with all requirements and obligations of the ATLANTIC Policy.

51.  ATLANTIC, without justification, breached its contract with JACUZZI by refusing to defend and indemnify JACUZZI with respect to the <u>CASEY</u> lawsuit.

52.  As a result of ATLANTIC's unjustified breach of contract, JACUZZI has incurred and continues to incur, damages, including but not limited to, attorney's fees and costs.

WHEREFORE Plaintiff JACUZZI, INC. prays that this Court enter a declaratory judgment in its favor and against Defendant ATLANTIC CASUALTY INSURANCE COMPANY, declaring, adjudging and decreeing as follows:

  a.  ATLANTIC has breached its obligation to defend JACUZZI for the <u>CASEY</u> lawsuit;

  b.  ATLANTIC must reimburse JACUZZI for all loss suffered as a result of the <u>CASEY</u> lawsuit;

  c.  ATLANTIC must reimburse JACUZZI for the attorneys' fees and costs it has incurred in order to bring this action;

  d.  ATLANTIC failed to undertake the defense of JACUZZI for the <u>CASEY</u> lawsuit under a reservation of rights or file a declaratory judgment action to resolve the coverage obligations to JACUZZI;

e.   As a result, ATLANTIC is estopped from asserting any defenses which might otherwise exist in its policy as to its coverage obligations to JACUZZI for the <u>CASEY</u> lawsuit;

f.   Based upon the imposition of estoppel, ATLANTIC is required to reimburse JACUZZI for all costs and fees JACUZZI incurred associated with the <u>CASEY</u> lawsuit; and

g.   Any further relief that this Court deems necessary and proper.

### COUNT IV
### (Bad Faith)

53.   JACUZZI reasserts and realleges Paragraphs 1- 52 in their entirety as Paragraphs 1- 52 of Count IV as though fully set forth herein.

54.   On October 30, 2008, ATLANTIC unjustifiably denied JACUZZI's tender for the <u>CASEY</u> lawsuit.

55.   Despite several letters sent by JACUZZI to ATLANTIC regarding the denial and ATLANTIC's coverage obligations, ATLANTIC has failed to respond to any of JACUZZI's correspondence for over six months.

56.   ATLANTIC's denial of JACUZZI's tender was wrongful and in bad faith.

57.   Accordingly, JACUZZI is entitled to reimbursement of all costs and fees it has incurred in the <u>CASEY</u> lawsuit, including the attorneys' fees and costs it has incurred in order to bring this declaratory action.

WHEREFORE Plaintiff JACUZZI, INC. prays that this Honorable Court enter judgment in favor of JACUZZI and against Defendant ATLANTIC CASUALTY INSURANCE COMPANY, for all damages arising from Defendant ATLANTIC CASUALTY INSURANCE COMPANY's breach of contract including all attorneys fees and costs incurred in the defense of the underlying suit and any settlement or judgment entered on <u>CASEY</u> complaint.

Dated: New York, New York

September 15, 2009

LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: _____

John J. Doody (JD 0552)
Attorneys for JACUZZI, INC.
199 Water Street, 25th Floor
New York, New York 10038
(212) 232-1300
(212) 232-1399 fax

**EXHIBIT A**

03/19/2001   08:38   631-862-8818          NORTHWAY POOL SERVIC __          PAGE   01



# PREMIUM SPAS

### SERVICE CENTER AGREEMENT

Jacuzzi Premium Spas having its principal place of business at 14525 Monte Vista Ave, Chino, Ca 91710 (Company) hereby designates Service Center (identified below) as a non-exclusive warranty and service station for the Company's Jacuzzi Premium Spas and related products. Company and Service Center agree that the following terms and conditions shall govern the relationship of the parties and the purchase, resale, and service of products manufactured or distributed by Company ("Products") by Service Center.

## Terms and Conditions

A. Service Center acknowledges that it is an independent contractor buying products for its own account and that this agreement does not create an agency, joint venture, partnership or employer-employee relationship between the Company and the Service Center. Service Center also acknowledges that it has no authority to act or bind Company in any way, to execute agreements on behalf of Company or to represent that Company is in any way responsible for Service Center's acts or omissions. Service Center is expressly responsible for all tax liabilities levied against it, or incurred in connection with its activities.

B. Service Center will at all times conduct business in a manner that will reflect favorably on Products and their high quality image, credibility and reputation, and on the goodwill and reputation of Company.

C. Service Center agrees not to make any representations with respect to warranties, specifications, features, or capabilities of Products. Service Center understands and will direct any consumer and/or customer inquiries on the subject of warranties to the fact that warranties are limited as stated in the documents received with the Products.

D. Company shall provide technical training programs ("Seminars") for Service Center personnel on a space available basis in accordance with Company's current schedule. Each servicing person shall attend as many seminars as may be required to maintain a technically capable service staff.

E. Service Center shall provide warranty and non-warranty repair on all the Products promptly and efficiently in accordance with all the terms and conditions of Company's Service Policies and Procedures then in effect. Company agrees to pay the Service Center for eligible warranty calls and labor rendered under the terms of the warranty. The spa owner is responsible for any service call that is a nuisance or non-warranty call.

F. Service Center's exclusive and sole remedy on account of being furnished with non-conforming product or materials shall be to secure replacement thereof. Under no circumstances shall Company be liable for any special, direct, indirect, or consequential damages, losses, or expenses.

G. Service Center shall promptly notify Company of any warranty claim made by a customer and make all servicing records and information available to Company for disposition.

H. Upon termination of this agreement and continuing thereafter, Service Center shall promptly refer all warranty service requests directly to Company for disposition.

I. Terms of payments shall be in accordance with Company's policies and procedures in effect at the time of acceptance of any order. Service Center agrees to provide Company current credit information upon request. Company reserves the right to grant or deny credit to Service Center and require payment for any order prior to shipment or on delivery. At the option of Company, any delinquent account may result in refusal to make future shipments and may result in termination of Service Center Agreement by Company.

J. This agreement may be terminated by either party at any time for any reason or no reason by giving 30 days written notice to the other party.



K. During the term of this agreement, Service Center may be provided or exposed to information that is confidential or proprietary in nature. This information shall be at all times the sole and exclusive property of company. Service Center will not disclose, transfer or exploit proprietary materials, Company trade secrets or other confidential information. When in doubt, Service Center should presume business, technical or other information relating to Company's business or Product is confidential.

L. Service Center and all its representatives agree to indemnify and hold Company and all its representatives harmless from any and all claims, damages, liabilities and expenses of every kind and nature whatsoever, including reasonable attorney's fees and expenses of suit arising from acts of third parties in relation to this agreement.

M. Service Center shall maintain, at its sole expense, insurance covering such risks as is generally accepted as reasonable and proper business practice and shall submit to Company evidence of such insurance upon request. Service Center shall also maintain any and all licenses required by local, state, and/or Federal authorities.

N. The parties agree to resolve any and all disputes involving them by utilizing binding arbitration in accordance with the California Code of Civil Procedure, (including but not limited to 1280 et.seq.) in San Bernardino, California at the offices of the Judicial Arbitration and Mediation Services ("JAMS") which shall have jurisdiction and venue on all disputes. The laws of the State of California shall govern this agreement and all transactions and other agreements between Company and Service Center. All parties agree that the arbitrator shall award attorney's fees and arbitration expenses against the losing party. Notwithstanding any law limiting or precluding the recovery of attorney's fees in fulfilling this mandatory requirement that attorney's fees must be awarded against the losing party, the arbitrator shall determine and include in the arbitrator's award the following findings: (1) identification of the losing party(ies), with supporting reasons and reasoning; (2) identification of the party(ies) entitled to recover attorney's fees, with supporting reasons and reasoning, and (3) the amount of the attorney's fees payable by losing party(ies), with supporting reasons and reasoning.

This Service Center Agreement shall not become a binding agreement between the parties until it is accepted in writing by Company in Chino, California. Service Center and Company agree that the sites for contract and formal purposes hereunder shall be Chino, San Bernardino County, California.

Agreed to and accepted by:

**SERVICE CENTER**

Signed By: _____

Print Name: _Phil   Siemann_

Title: _President_          Date: _3/19/01_

Service Center Name: _Northway   Pool   Service_

Address, City, State, Zip: _11   Pottw   Ro       St. James_

_New   York       11780_

Contact Name & Phone #: _Phil   631 - 862 - 8925_

**JACUZZI PREMIUM SPAS**

Signed By: _____

Print Name: _VUNT   BACHMEYER_

Title: _JACUZZI   PREMIUM SPAS MGR._   Date: _3/21/01_

**EXHIBIT  B**

# POLICY BANNER PAGE

**POLICY NUMBER:**

**INSURED:**

## THE BELOW PAPER FORMS NEED TO BE PULLED AND ADDED TO THE POLICY

**FORM NAME**                                    **FORM NAME**

ACJ1   11-02



# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>L035004809 | NAMED INSURED<br>NORTHWAY POOL SERVICE |
|---|---|

Form/Endorsement No./Edition Date

| | |
|---|---|
| ACJ1  11-02 | POLICY JACKET |
| ACD 04-03 | COMMON POLICY DECLARATION |
| ACI-GLB 07-01 | PRIVACY POLICY |
| A-MEP1 01-05 | MIN EARNED PREM |
| IL0017 11-98 | COMMON POLICY CONDITIONS |
| IL0021 07-02 | NUCLEAR ENERGY EXCLUSION |
| ACD-GL1 01-03 | GL COVERAGE DECLARATIONS |
| ACI-SOSB 05-99 | BLANK SERVICE OF SUIT |
| CG0001 10-01 | COMMERCIAL GL COV FORM |
| CG0300 1-96 | LIABILITY INS DEDUCTIBLE |
| CG2101 11-85 | EXCL - ATHLETIC OR SPORTS PART |
| CG2116 07-98 | EXCL - DESIGNATED PROF SERVICE |
| CG2146 7-98 | ABUSE OR MOLESTATION EXCLUSION |
| CG2173 12-02 | EXCL CERTIFIED ACTS OF TERRORI |
| CG2187 05-04 | CONDITIONAL EXCL OF TERRORISM |
| AGL-C-2 08-05 | COMBO ENDORSE EXCLUSIONS/LIMIT |
| AGL-010 01-04 | DESIGNATED OPERATIONS EXCL |
| AGL-012 01-03 | PREMIUM AUDIT-DEPOSIT PREM END |
| AGL-015 01-03 | CLASSIFICATION LIMITATION ENDO |
| AGL-035 01-06 | RAIN-SNOW-HAIL PROP DAM EXCL |

AC 002

Insert form ACJ1  11-02 here.



**Atlantic Casualty Insurance Company**

# COMMON POLICY DECLARATIONS

Policy Number  L035004809

L035003435
Renewal of Number

| Item 1. Named Insured and Mailing Address: |
|---|

NORTHWAY POOL SERVICE

11 PATTON ROAD
ST. JAMES                    NY 11780

| Item 2. Policy Period | From: 02/01/2006 | To: 02/01/2007 | Term 365 | Day(s) |
|---|---|---|---|---|

12:01 A. M.  Standard Time at the address of the Named Insured as stated herein

Item 3.  Business Description:
POOL SERVICING

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No and Edition Date | | Premium |
|---|---|---|---|
| Commercial General Liability Coverage Part | | | $ 10,953.00 |
| Property Coverage Part | | | $ |
| Inland Marine Coverage Part | | | $ |
| Terrorism Coverage | | | $ |
| | Subtotal | | $ 10,953.00 |
| | NYSLT: | $394.31 | $ |
| | STAMPING FEE: | $21.91 | $ |
| | POLICY FEE: | $175.00 | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | Total | $ 10,953.00 |

Audit Period Annual unless otherwise stated: _____

Item 4.  Forms and endorsements applicable to all Coverage Parts:
    See Schedule of Forms and Endorsements

Agent No.:          035
General Agent: JIMCOR AGENCIES
Address:          60 CRAIG ROAD
                  MONTVALE                    NJ  07645

Producer Code No.:
Producer Name:    THE SCHAEFER AGENCY, INC.    (631) 979-7474
Producer Address: PO BOX 688
                  SMITHTOWN                    NY  11287

Countersigned _____02/21/2006_____ AMR/ETR          By _____
                        DATE                                    COUNTERSIGNATURE

THIS COMMON POLICY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBER POLICY.

IN WITNESS WHEREOF, this Company has caused the Policy to be signed by its President and its Secretary and countersigned by a duly authorized representative.

President

Secretary

ACD 04-03                              INSURED                                    AC 004

# PRIVACY POLICY

Atlantic Casualty Insurance Company believes that personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;

2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;

3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;

4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;

5. We will not disclose information about you or your business to any organization outside our company or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;

6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;

7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and

8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- **Submission** - During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;

- **Quotes** - We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;

- **Transactions** - We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

ACI-GLB 07-01

Page 1 of 3

AC 005

- **Claims -** If you obtain insurance form us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

- **Credit and Financial Reports -** We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

### Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

### Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

### Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

### Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or aditing.

ACI-GLB 07/01

AC 006

## Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant or subpoena.

## Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

ACI-GLB 07/01

Page 3 of 3

AC 007

# ATLANTIC CASUALTY INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### MINIMUM EARNED PREMIUM

If this policy is cancelled for any reason, except at the request of the Company, you agree with us that the minimum earned premium for this policy is 25% of the total policy premium, unless otherwise indicated below. It is further agreed that such minimum earned premium is not subject to short rate or pro rata adjustment.

All premium charges for adding additional insured and/or waiver of subrogation endorsements to this policy shall be 100% fully earned.

☐ 50% of the total policy premium

☐ 100% of the total policy premium

A-MEP1 Edition 01/05

AC 008

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:
   a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and
c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

AC 009

Case 2:09-cv-04012-JS-AKT   Document 1   Filed 09/17/09   Page 25 of 50 PageID #: 25

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or

on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possesions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore pro-

 Copyright, ISO Properties, Inc., 2001

AC 010

cessed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.



**Atlantic Casualty Insurance Company**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Renewal of Number  L035003435

Policy No.  L035004809

Named Insured and Mailing Address (No . Street, Town or City. County . State . Zip Code)*
NORTHWAY POOL SERVICE

11 PATTON ROAD
ST. JAMES                     NY 11780
Policy Period * : From 02/01/2006   to 02/01/2007   at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit | $ 1,000,000 | |
| Damages To Premises | | |
| Rented To You Limit | $ 50,000 | Any one premises |
| Medical Expense Limit | $ 5,000 | Any one person |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any one person or organization |
| General Aggregate Limit | | $ 2,000,000 |
| Products / Completed Operations Aggregate Limit | | $ INCLUDED |

### RETROACTIVE DATE (CG 00 02 ONLY)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:
(Enter Date or "None" if no Retroactive Date applies)

### DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES

Form of Business:
☐ Individual     ☐ Joint Venture     ☐ Partnership     ☒ Organization (Other than Partnership or Joint Venture)
Business Description* :
POOL SERVICING

Location of All premises You Own, Rent or Occupy:

| | | |
|---|---|---|
| VARIOUS / 11 PATTON ROAD | ST. JAMES | NY 11780 |

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Swimming Pool Servicing - including Products and/or Completed Operations subject to the General Aggregate Limit | 99505 | P  70,000 PR | INCL | 156.472 | $ INCL | $10953 |
| | | | Extension Subtotal | | $ | |
| | | | Total or Minimum Premium | | $ 10,953.00 | |

* * (a) area   (c) total cost   (m) admission   (p) payroll   (s) gross sales   (u) units   (t) other

### FORMS AND ENDORSEMENTS applying to this Coverage part and made part of this policy at time of issue + :
SEE SCHEDULE OF FORMS AND ENDORSEMENTS

Countersigned:*

By _____

*Authorized Representative*

* Entry optional if shown in Common Policy Declarations.

+ Forms and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc.

ACD-GL1 01-03

AC 012

# ATLANTIC CASUALTY INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT ENDORSEMENT

It is agreed that service of process in suit may be made upon:

RAGSDALE, LIGGETT and FOLEY
2840 PLAZA PLACE, SUITE 400
RALEIGH                         NC   27612
ATTN: FRANK LIGGETT III

and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of any Court or Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon the Company's behalf in the event a suit is instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ACI-SOS 05/99

AC 013

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bod-

Copyright, ISO Properties, Inc., 2000

AC 014

ily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   Copyright, ISO Properties, Inc., 2000

AC 015

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

　(i) Any insured; or

　(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

　(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor; .

　(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

　(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

Copyright, ISO Properties, Inc., 2000

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced be-

cause "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

 Copyright, ISO Properties, Inc., 2000

AC 017

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance ; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

   "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

   "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

   "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

   "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

   "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

   "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

   "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

   "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

   However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

Copyright, ISO Properties, Inc., 2000

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

Copyright, ISO Properties, Inc., 2000

AC 019

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

AC 020

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

 Copyright, ISO Properties, Inc., 2000

AC 021

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage C;

   **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage A; and

   **b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

AC 022

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

AC 023

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

      provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

Copyright, ISO Properties, Inc., 2000

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

  **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

  **b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

Copyright, ISO Properties, Inc., 2000
AC 025

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke,

vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall

Copyright, ISO Properties, Inc., 2000

AC 026

be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Others trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

     **(2)** The providing of or failure to provide warnings or instructions.

Copyright, ISO Properties, Inc., 2000

POLICY NUMBER: L035004809

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deduction PER CLAIM or PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability OR | $ | $ |
| Property Damage Liability OR | $  250.00 | $ |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

    a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

    b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

    (1) "Bodily injury";

    (2) "Property damage"; or

    (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

CG 03 00 01 96          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2

AC 028

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc.,

CG 03 00 01 96

AC 029

POLICY NUMBER:L035004809                          COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

Description of Operations:

AS SHOWN ON FORM ACD-GL1

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

CG 21 01 11 85                          Copyright, Insurance Services Office, Inc., 1984

AC 030

**POLICY NUMBER:** L035004809

**COMMERCIAL GENERAL LIABILITY**
**CG 21 16 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

| Description Of Professional Services: |
|---|
| 1.  POOL SERVICING |
| 2. |
| 3. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

Copyright, Insurance Services Office, Inc., 1997

AC 031

COMMERCIAL GENERAL LIABILITY
CG 21 46 07 98

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions** of **Section I - Coverage A- Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I- Coverage B- Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to the proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

CG 21 46 07 98          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 1

AC 032

Case 2:09-cv-04012-JS-AKT Document 1 Filed 09/17/09 Page 48 of 50 PageID #: 48

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/ COMPLETED OPERATIONS LIABILITY OPERATIONS COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of "a certified act of terrorism".

**B.** The following definitions are added:

    **1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

    **2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

        **a.** The act resulted in aggregate losses in excess of $5 million; and

        **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

AC 033

COMMERCIAL GENERAL LIABILITY
CG 21 87 05 04

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. **Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

    b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

       (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses); or

       (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

       (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

    a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident (s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

    b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

COPYRIGHT ISO Properties, Inc., 2004

AC 034

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

### EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5 or C.6 are exceeded.

With respect to this Exclusion, Paragraphs C.5 and C.6 describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to an incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

    Copyright ISO Properties, Inc., 2004    CG 21 87 05 04

AC 035