```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JACUZZI, INC.,

                    Plaintiff,             MEMORANDUM & ORDER
                                           09-CV-4012 (JS) (MLO)
        -against-

ATLANTIC CASUALTY INSURANCE COMPANY,
NORTHWAY POOL SERVICE, INC., and
PATRICIA CASEY, as Executrix of THE
ESTATE OF JOSEPH CASEY,

                    Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiff:        John J. Doody, Esq.
                      Lewis Brisbois Bisgaard & Smith, LLP
                      199 Water Street, 25th Floor
                      New York, NY 10038

For Defendants:
Atl. Casaulty Ins. Co. Debra Miller Krebs, Esq.
                      Milber Makris Plousadis & Seiden, LLP
                      411 Hackensack Ave, Suite 303
                      Hackensack, NJ 07601

Remaining Defendants  No appearances.
```

SEYBERT, District Judge:

Plaintiff Jacuzzi, Inc., filed suit asserting declaratory judgment, breach of contract and "bad faith" claims against Atlantic Casualty Insurance Company ("Atlantic"). The Complaint also names two nominal defendants: Northway Pool Service, Inc. ("Northway") and Patricia Casey, as Executrix for the Estate of Joseph P. Casey. On November 23, 2009, Atlantic moved to dismiss Jacuzzi's Complaint. In response, Jacuzzi agreed to withdraw its bad faith claim, but otherwise argues

that its Complaint is properly pled. The Court agrees. Thus, for the foregoing reasons, the Court DENIES Atlantic's motion to dismiss.

BACKGROUND

On March 19, 2001, Northway entered into a Service Agreement with Jacuzzi for the purchase, resale and servicing of Jacuzzi products. Compl. ¶ 7. Under this Agreement, Northway agreed, in pertinent part, to "indemnify and hold [Jacuzzi] and its representatives harmless from any and all claims, damages, liabilities and expenses of every kind and nature whatsoever, including reasonable attorney's fees and expenses of suit arising from acts of third parties in connection with this agreement." Compl. Ex. A at § L. Northway further agreed to purchase "insurance covering such risks as is generally accepted as reasonable and proper business practice." Id. at § M. To that end, Northway purchased insurance from Atlantic ("the Policy"). Compl. ¶ 14.

Under the Policy, Atlantic agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." Compl. Ex. B § I(1)(a). The Policy's "insurance applies to 'bodily injury' or 'property damage'" that: (1) occurs in the "coverage territory" (i.e., the United States and Canada); (2) during the policy period; and (3) is not

2

a "continuation, change or resumption" of injuries that occurred prior to the policy period which Northway or its employees knew about. Id. §§ I(1)(b); V(1)(4). The Policy excludes coverage for "contractual liability." Id. § I(2)(b). But this exclusion does not apply to "insured contracts," defined, in pertinent part, as a contract whereby Northway agreed "to assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Id. §§ I(2)(b)(2); V(9)(f). Indeed, for "insured contracts," Atlantic agreed to cover more than actual "bodily injury" or "property damage." It also agreed to cover "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than the insured." Id. § I(2)(b)(2).

On April 28, 2006, Northway repaired Joseph Casey's Jacuzzi hot tub. Compl. ¶ 22. That same day, Mr. Casey sustained serious physical injury while using the hot tub, leading to his death. Id. § 23. This led to Patricia Casey, as Executrix for Mr. Casey's estate, commencing suit against Northway and Jacuzzi in New York Supreme Court, County of Suffolk. Id. § 24. Jacuzzi then sought defense and indemnification from Northway and Atlantic, which both companies denied. Id. §§ 27-30.

This action followed. In it, Jacuzzi contends that: (1) Northway added Jacuzzi as an additional insured on the

3

Policy; and (2) in any event, the Service Agreement was an "insured contract," and thus obligates Atlantic to indemnify and defend Jacuzzi.

DISCUSSION

I. Standard Of Review On A Motion To Dismiss

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Ashcroft). Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). Id. Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

II. Jacuzzi's Complaint States A Claim

A. For Motion To Dismiss Purposes, Jacuzzi Is An Insured

Atlantic first argues that Jacuzzi is not an insured because the Policy, which Jacuzzi attached to its Complaint, does not list Jacuzzi as an insured. The Court agrees that it

4

can properly consider the Policy, even on Atlantic's motion to dismiss. Spirit Locker, Inc. v. EVO Direct, LLC, 09-CV-1582, 2010 U.S. Dist. LEXIS 26080, *8 (E.D.N.Y. 2010) (on a 12(b)(6) motion to dismiss, the Court may "consider documents attached to the complaint as exhibits, or documents upon whose terms the complaint relies"). And the Court further agrees that the Policy does not list Jacuzzi as an insured. The problem with Atlantic's argument is that Jacuzzi expressly pled in its Complaint that the Policy was not the only applicable agreement between Northway and Atlantic. Specifically, Jacuzzi set forth that "Upon information and belief, NORTHWAY did procure insurance coverage for JACUZZI as an additional insured on its insurance policy with ATLANTIC." Compl. ¶ 12. And Jacuzzi further averred that the Policy attached to the Complaint "is incomplete" and that Atlantic has failed to provide it with a "certified copy of the subject policy." Id. at n. 2. Thus, although attaching the Policy to the Complaint, Jacuzzi identified this document only as what "ATLANTIC purports to be a complete copy of the policy," not as the actual applicable agreement. Id. at ¶ 15. It follows then that, accepting Jacuzzi's allegations as true, Jacuzzi has properly alleged the existence of another policy, or a rider/addendum to the Policy, which names it as an insured. Consequently, Jacuzzi's claims survive Atlantic's motion to dismiss.

5

B. *Jacuzzi's "Insured Contract" Theory Also Survives A Motion to Dismiss*

Atlantic also disputes that it owes coverage to Jacuzzi based on the Policy's "insured contract" clause. Specifically, Atlantic argues that the "insurance contract" clause is only an exception to an exclusion, and does not create coverage by itself.

This argument is meritless. Yes, the "insured contract" clause does not, by itself, provide coverage. But other provisions of the Policy clearly do. Section I(1) clearly sets forth that the Policy's coverage "applies to 'bodily injury' or 'property damage'" that: (1) occurs in the "coverage territory"; (2) during the policy period; and (3) is not a "continuation, change or resumption" of injuries that occurred prior to the policy period which Northway or its employees knew about. Here, Mr. Casey suffered an injury within the "coverage territory" (i.e., the United States and Canada). This injury occurred during the policy period. And there is no indication that it was a "continuation, change or resumption" of a prior injury. Thus, Section I(1) extends coverage with respect to Mr. Casey's "bodily injur[ies]."

Section I(2)(b) then carves out an exclusion to Atlantic's "bodily injury" and "property damage" coverage. Under this exclusion, Atlantic is not obligated to cover "bodily

6

injury" or "property damage" that Northway incurs "by reason of the assumption of liability in a contract or agreement." But this exclusion itself contains an exception: the exclusion "does not apply to liability for damages" assumed in an "insured contract." In other words, Atlantic <u>agreed</u> to cover Northway's contractual liability under "insured contracts." And what is an insured contract? A contract "to assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Here, Northway entered into the Service Agreement. In so doing, Northway agreed to "indemnify and hold [Jacuzzi] and its representatives harmless from any and all claims, damages, liabilities and expenses of every kind and nature whatsoever . . . arising from acts of third parties in connection with this agreement" Compl. Ex. A. By agreeing to indemnify claims of "every kind and nature," Northway agreed to indemnify Atlantic for tort claims that "arise from acts of third parties in connection with this agreement." It follows then that, at least with respect to some tort claims, the Service Agreement qualifies as an insured contract. And thus, under the Policy, Atlantic agreed to cover Northway's contractual indemnification obligations to Jacuzzi for tort claims that "arise from acts of third parties in connection with this agreement."

The question then turns to whether the Casey litigation asserts such tort claims. This is unclear. The Casey Complaint names three defendants, Jacuzzi, Northway, and Philip Seimann, and purports to assert three claims against all of them: (1) negligent repair; (2) negligent design; and (3) failure to supervise. To the extent that the Complaint asserts claims against Northway or Jacuzzi for their own acts, these claims presumably do not "arise from acts of third parties." But the Complaint also names Philip Seimann as a defendant. And there is nothing in the record which would enable the Court, on a motion to dismiss, to take judicial notice of who Philip Seimann is, what "acts" he performed, and whether he is a "third party[]" under the Service Agreement. Rather, on this motion, the Court must draw all reasonable inferences in Plaintiff's favor. And drawing such inferences, the Court must presume that: (1) Philip Seimann is a "third party" within the Service Agreement's meaning; and (2) his "acts," in part, led to some of the Casey litigation's claims. It follows then that Atlantic's motion to dismiss must be denied.

## CONCLUSION

Atlantic's motion to dismiss is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, NY
      May 5, 2010